UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                   )
ANDREW CHAPMAN                     )
                                   )
        Plaintiff,                 )
                                   )
             v.                    )     Civil Action No. 12-10525-JCB
                                   )
OFFICER BRANDON FINNEGAN, et al.   )
                                   )
        Defendants.                )
_____)

ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[Docket No. 41]

June 7, 2013

Boal, M.J.

Plaintiff Andrew Chapman ("Chapman" or "Plaintiff") brings this action against three Marblehead police officers, Brandon Finnegan, Dean Peralta, and Shaun Brady, the Chief of Police of the Town of Marblehead, Robert Picariello, and the Town of Marblehead. The action arises out of his arrest for domestic assault and battery on April 1, 2009. He brings claims for violations of his constitutional rights under 42 U.S.C. § 1983, and assault and battery.

On July 17, 2012, the parties consented to the exercise of jurisdiction by a United States Magistrate Judge for all purposes. Docket No. 15; see also Docket No. 36. The Defendants have moved for summary judgment on all of Plaintiff's claims. Docket No. 41. For the following reasons, this Court grants the motion.

I.    PROCEDURAL BACKGROUND

Chapman filed his Complaint on March 22, 2012. Docket No. 1. He filed an Amended

Complaint on July 24, 2012.  Docket No. 16.  Defendants filed their answer on July 26, 2012.  Docket No. 17.

Discovery closed in January 2013.  On February 25, 2013, Defendants filed their motion for summary judgment.  Docket No. 41.  Chapman filed his opposition on April 12, 2013.  Plaintiff did not file a response to the Defendants' statement of undisputed facts as required by Local Rule 56.1 and the Court's scheduling order.  Accordingly, on April 16, 2013, the Court ordered Plaintiff to file his response no later than April 17, 2013.  Docket No. 49.  On April 18, 2013, Plaintiff filed a response to Defendants' statement of undisputed facts.  Docket No. 50.  However, Plaintiff's response failed to cite to any admissible evidence of record as required by Local Rule 56.1 and Fed. R. Civ. P. 56(c)(1).  Accordingly, the Court ordered Plaintiff to file a revised response, along with copies of all referenced documentation, by April 26, 2013.  Docket No. 51.  Plaintiff requested an extension of that deadline, which the Court granted.  Docket Nos. 52, 53.  On May 23, 2013, Plaintiff filed a copy of certain exhibits in support of his opposition to Defendants' motion for summary judgment but he did not file a revised response to Defendants' statement of undisputed facts with cites to admissible evidence of record.  Docket No. 55.  At oral argument, Plaintiff requested one more opportunity to file a response to Defendants' statement of undisputed facts that complied with Local Rule 56.1 and the Court ordered that he may do so by June 7, 2013.  On June 7, 2013, Chapman filed a "List of Deposition Exhibits," which referenced certain portions of his testimony that he contends create an issue of material fact.  Docket No. 57.  He still did not, however, file a response to Defendants' statement of undisputed fact which cites to admissible evidence of record.  In any event, even if the referenced testimony was properly aligned to particular statements of undisputed facts, it would

make no difference to the Court's analysis on the merits.  Docket No. 48.

The Court heard oral argument on June 5, 2013.

II.    FACTS[1]

On April 1, 2009, Marblehead police officers Brendan Finnegan and Dean Peralta arrested Chapman for domestic assault and battery.  SOF ¶ 3.[2]  At the time, Chapman was 62 years old, while the alleged female victim, Ashley Phelan, was 22 years old.  SOF ¶¶ 1-2.  Phelan had called Marblehead police and reported that Chapman, her boyfriend of two years, had shoved her and grabbed her by the throat.  SOF ¶ 4.  She also reported that she had to knee Chapman to get him away before calling the police.  Id.  As a result of the call, Finnegan and Peralta were dispatched to Chapman's residence for a domestic disturbance and were informed that Phelan would meet them in front of Chapman's residence.  SOF ¶¶ 5-6.  They were also told that the Plaintiff had an active license to carry firearms.  SOF ¶ 5.

Upon arrival at Chapman's residence, Finnegan and Peralta found Phelan crying and emotional in the front driver's seat of her car.  SOF ¶ 7.  She told Finnegan and Peralta that Chapman grabbed her by the throat and told her to get out of his house.  SOF ¶ 8.  She also told Finnegan and Peralta that Chapman grabbed her so tight around the neck that she could not

---

[1] The facts, unless otherwise noted, are undisputed and are derived from Defendants' statement of undisputed facts and Chapman's responses.  (Docket Nos. 43, 50).  Because this case is before the Court on a motion for summary judgment, the Court sets out any disputed facts in the light most favorable to Chapman, the non-moving party.  See DeNovellis v. Shalala, 124 F.3d 298, 302 (1st Cir. 1997).  However, Chapman cannot create an issue of fact without citing to competent evidence of record.  See Hidalgo v. Overseas Condado Ins. Agencies, Inc., 120 F.3d 328, 338 (1st Cir. 1997).

[2] "SOF" refers to the Plaintiff's response to the Defendants' Local Rule 56.1 statement of undisputed facts.  Docket No. 50.

breathe, and that she had to kick Chapman in the groin to release his grip. SOF ¶¶ 9-10. She showed the officers bruising and red marks on her neck, which the officers thought were consistent with being strangled. SOF ¶¶ 12-13. Phelan informed the officers that Chapman was in his second floor apartment and that he had firearms in his house. SOF ¶ 14.

Finnegan and Peralta then went to Chapman's apartment and spoke with him. SOF ¶ 15. Chapman told the officers that Phelan was looking for a "fix" and that he did not touch her in any way. Id. He also told the officers that he had a casual relationship with Phelan and that he had to stop Phelan from entering his house. Id. Chapman was arrested for domestic assault and battery. SOF ¶ 17.

Although Chapman denies assaulting Phelan and her version of the events, he does not dispute the Defendants' version of what they were told by Phelan or that they observed marks in her neck.[3] He disputes, however, that the marks were red. Chapman alleges that the marks were yellow and were from an earlier incident where Phelan's father pulled her off her mother after she attacked her mother. SOF ¶ 12.

At the police station, EMT officer overheard a conversation and offered to go to

---

[3] In his response to the Defendants' statement of undisputed facts, Chapman responds to all statements regarding what Phelan did or told the police by stating that he cannot admit or deny the statement because he does not know what Phelan did or told the officers. See, e.g., SOF ¶¶ 4-11, 14. A party opposing summary judgment cannot create a genuine issue of fact by denying statements, which the moving party contends are undisputed and supported by sufficient evidence, on the basis that he lacks knowledge and information to admit or deny the statement. See, e.g., Cooper v. City of New Rochelle, __ F. Supp. 2d __, 2013 WL 684747, at *9 (S.D.N.Y. Feb. 26, 2013). Discovery allows the party opposing summary judgment to obtain the facts necessary to determine whether it must admit or deny the moving party's statements of fact. AFL Fresh & Frozen Fruits & Vegetables, Inc. v. De-Mar Food Servs. Inc., No. 06 Civ 2142, 2007 WL 4302514, at *4 (S.D.N.Y. 2007). Thus, whenever Chapman responds that he does not have knowledge sufficient to admit or deny a fact, the Court deems that fact admitted for purposes of Defendants' motion for summary judgment.

Chapman's residence to retrieve some diabetes medication that Chapman needed. SOF ¶ 18. The EMTs later returned with the medication and Chapman injected himself with the medication. SOF ¶ 22. Chapman was then booked and transferred to the Essex County House of Correction. SOF ¶¶ 23-24. Chapman estimates that he was at the Marblehead Police Station for approximately 30 to 45 minutes. SOF ¶ 26.

III. ANALYSIS

    A. Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is 'genuine' if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party." Sanchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996) (quotations and citations omitted). A material fact is one which has "the potential to affect the outcome of the suit under the applicable law." Id. (quotations and citations omitted).

The moving party bears the initial burden of establishing that there is no genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If that burden is met, the opposing party can avoid summary judgment only by providing properly supported evidence of disputed material facts that would require trial. See id. at 324. "[T]he non-moving party 'may not rest upon mere allegation or denials of his pleading,'" but must set forth specific facts showing that there is a genuine issue for trial. LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).

"[T]he material creating the factual dispute must herald the existence of 'definite,

competent evidence' fortifying the plaintiff's version of the truth. Optimistic conjecture . . . or hopeful surmise will not suffice." Hidalgo, 120 F.3d at 338. In addition, a plaintiff may not attempt to create an issue of fact by contradicting his prior deposition testimony. Morales, 246 F.3d at 32.

The court must view the record in the light most favorable to the non-moving party and indulge all reasonable inferences in that party's favor. See O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993). "If, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate." Walsh v. Town of Lakeville, 431 F. Supp. 2d 134, 143 (D. Mass. 2006).

> B.  Chapman's Claims Against The Town Of Marblehead And
>     Chief Of Police Picariello Fail As A Matter Of Law

Chapman brings claims against the Town of Marblehead and Chief of Police Picariello under Section 1983 (Count One) and based on theories of "vicarious liability" and "respondeat superior" (Counts Four through Seven). [4] These claims fail as a matter of law.

> 1.  Claims Against The Town Of Marblehead

Under Section 1983, it is well established that a municipality is not liable for the actions

---

[4] Although Chapman brings separate claims for vicarious liability (Counts Four and Six) and respondeat superior (Counts Five and Seven), they are different names for the same concept. See Adams v. Hyannis Harborview, Inc., 838 F. Supp. 676, 691 (D. Mass. 1993) ("Respondeat superior imposes vicarious liability on a principal for the acts or conduct of its agent."); compare Black's Law Dictionary 927 (7th ed. 1999) (defining vicarious liability as "[l]iability that a supervisory party bears for the actionable conduct of a subordinate or associate (such as an employee) because of the relationship between the two parties") with Black's Law Dictionary 1313 (defining "respondeat superior" as "[t]he doctrine holding an employer or principal liable for the employee's or agent's wrongful acts committed within the scope of the employment or agency").

of its employees simply by virtue of the employment relationship. Monell v. Dep't of Social Servs. of City of New York, 436 U.S. 658, 692 (1978). Instead, under Monell and subsequent cases, a plaintiff seeking to prove municipal liability under Section 1983 must identify a municipal policy or custom that caused the plaintiff's injury. Id. at 694; City of Oklahoma City v. Tuttle, 471 U.S. 808, 818 (1985); Young v. City of Providence, 404 F.3d 4, 25 (1st Cir. 2005). "Locating a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." Board of the County of Comm'rs of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 403-04 (1997). "Similarly, an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." Id. at 404.

A Section 1983 claim based on a theory of municipal policy is only viable where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell, 436 U.S. at 690. "The governmental policy must be so tied to the challenged acts that it can be said to be the moving force of the constitutional violation." Bibbo v. Mulhern, 621 F. Supp. 1018, 1027 (D. Mass. 1985) (internal citations omitted).

Similarly, in order to establish a Section 1983 claim against a municipality based on a theory of municipal custom, a plaintiff must demonstrate a practice by City officials that is so "well settled and widespread that the policymaking officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practice."

Bordanaro v. McLeod, 871 F.2d 1151, 1156 (1st Cir. 1989) (citations omitted). Where the Section 1983 claim is based on a municipality's alleged failure to train, discipline or supervise its officers, this failure must be so extreme and pervasive that it amounts to a deliberate indifference to the rights of persons with whom the officers come into contact. DiRico v. City of Quincy, 404 F.3d 464, 468-69 (1st Cir. 2005) (citing City of Canton v. Harris, 489 U.S. 378, 388 (1989) and Bordanaro, 871 F.2d at 1159). In addition, the plaintiff must prove that the "custom must have been the cause of and the moving force behind the deprivation of constitutional rights." Bordanaro, 871 F.2d at 1156.

Chapman has not pointed to any evidence that would create a genuine issue of fact regarding municipal liability. He has pointed to no policy or custom that caused the alleged constitutional violations. Indeed, in his opposition, Chapman simply states that "a municipality may, in certain circumstances, be held liable under section 1983 for constitutional violations resulting from its failure to train its employees." Docket No. 48 at 5 (citations omitted). Chapman does not, however, point to any evidence that would support a finding that any such circumstances are present in this case. Accordingly, the Court finds that summary judgment in favor of the Town of Marblehead is appropriate.

2.     Claims Against Chief Picariello[5]

"Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that

---

[5] The Amended Complaint's caption states that Chapman's claims against Chief Picariello and the defendant police officers are brought "individually and in their official capacities as police officers." However, a state official acting in his official capacity cannot be sued for damages in a Section 1983 action. Wang v. New Hampshire Board of Registration in Medicine, 55 F.3d 698, 700 (1st Cir. 1995); Rafferty v. Cranston Pub. Sch. Comm., 315 F.3d 21, 28 (1st Cir. 2002). Therefore, Chapman cannot pursue money damages against Defendants in their official capacity for his Section 1983 claims and those claims will be dismissed.

each Government-official defendant, through the official's own individual actions, have violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." Id. at 677.

Absent participation in the challenged conduct, a supervisor may be held liable for constitutional violations only if "(1) the behavior of [his] subordinates results in a constitutional violation and (2) the [supervisor's] action or inaction was affirmative[ly] link[ed] to the behavior in the sense that it could be characterized as supervisory encouragement, condonation or acquiescence or gross negligence [of the supervisor] amounting to deliberate indifference." Pineda v. Toomey, 533 F.3d 50, 54 (1st Cir. 2008) (citation omitted). The plaintiff must show causation linking the supervisor's conduct to the subordinate's violative act or omission. Maldonado-Denis v. Castillo-Rodriquez, 23 F.3d 576, 582 (1st Cir. 1994) (citations omitted). Causation may be satisfied if the supervisor knew of, overtly or tacitly approved of, or purposely disregarded the conduct. Id. (citations omitted). Causation may also be satisfied if there is a long history of widespread abuse sufficient to alert a supervisor to ongoing violations and the supervisor fails to take corrective action. Id. (citations omitted).

Here, Chapman has pointed to no facts affirmatively linking Picariello to Finnegan and Peralta's decision to arrest Chapman or their actions in connection with Chapman's medical condition. He has pointed to no evidence that he was involved in any way in the events at issue in this case or that he even knew about the events. He also fails to point to any evidence of widespread abuses that would have alerted Picariello to any ongoing violations. Absent any factual basis to support a claim that Chief Picariello's conduct constituted supervisory

encouragement, condonation or gross negligence amounting to a deliberate indifference to Chapman's constitutional rights, Chapman has failed to create a genuine issue of fact regarding supervisory liability. Accordingly, the Court grants summary judgment in favor of Chief Picariello.

  C. <u>Chapman's Claims For False Arrest And Failure To Investigate</u>

Section 1983 is a vehicle through which individuals may sue certain persons acting under the color of state law for deprivation of federally assured rights. <u>Gagliardi v. Sullivan</u>, 513 F.3d 301, 306 (1st Cir. 2008). Specifically, Section 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

42 U.S.C. § 1983. Section 1983 is "not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." <u>Graham v. Connor</u>, 490 U.S. 386, 393-4 (1989).

"A claim under Section 1983 has two essential elements. First, the challenged conduct must be attributable to a person acting under color of state law" and "second, the conduct must have worked a denial of rights secured by the Constitution or by federal law." <u>Soto v. Flores</u>, 103 F.3d 1056, 1061 (1st Cir. 1997). The Defendants do not dispute that they were acting under color of state law. However, Defendants contend that Chapman has failed to state a claim that they deprived him of any constitutional rights.

Chapman alleges that his arrest violated his constitutional rights. An arrest is lawful if the officer has probable cause. <u>Holder v. Town of Sandown</u>, 585 F.3d 500, 504 (1st Cir. 2009)

-10-

(citing Tennessee v. Garner, 471 U.S. 1, 7 (1985)).  "A police officer has probable cause when, at the time of the arrest, the 'facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit and offense.'"  Id. (citations omitted).

In determining whether the officer has probable cause, this Court must view the circumstances from the perspective of a reasonable person in the position of the officer.  Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 255 (1st Cir. 1996).  Probable cause requires only a probability that the defendant committed the crime.  Holder, 585 F.3d at 504 (citations omitted).  "The test for probable cause does not require the officers' conclusion to be ironclad, or even highly probable.  Their conclusion that probable cause exists need only be reasonable."  Acosta v. Ames Dep't Stores, Inc., 386 F.3d 5, 11 (1st Cir. 2004) (internal quotation marks and citation omitted).

Whether the officers had probable cause to arrest is an objective inquiry.  Holder, 585 F.3d at 504 (citing Bolton v. Taylor, 367 F.3d 5, 7 (1st Cir. 2004)).  "The 'actual motive or thought process of the officer is not plumbed.'"  Id.  "The only relevant facts are those known to the officer.  When these facts are in reasonable dispute, the fact-finder must resolve the dispute."  Id. (citing Bolton, 367 F.3d at 7).  "However, when the underlying facts claimed to support probable cause are not in dispute, whether those 'raw facts' constitute probable cause is an issue of law."  Id. (citations omitted).

Here, there is no dispute regarding the underlying facts claimed to support probable cause. While Chapman disputes that he in fact assaulted Phelan, it is undisputed that she called

the police to report that Chapman had assaulted her.  SOF ¶ 4.  It is also undisputed that when Officers Finnegan and Peralta showed up, Phelan was crying and emotional, that she told them that Chapman was her boyfriend and that he had grabbed her by the neck so tight that she had to kick him to release his grip, and that she had marks and bruising in her neck.  SOF ¶¶ 7-12.  Given Phelan's version of events and visible injuries, a competent officer could believe that it was reasonably objective to arrest Chapman for domestic assault and battery.

Chapman argues that Finnegan and Peralta had a duty to investigate further before making an arrest because they were informed by Chapman that (1) he has a diabetic neuropathy on both sides, rendering it physically impossible for him to grab Phelan in the way she described; (2) the marks on Phelan's neck were yellow, not red, indicating an older incident; and (3) the marks were from Phelan's father pulling her away from her mother, who she had attacked on an earlier date.  Docket No. 48 at 4.   This Court disagrees.

Probable cause determinations are "preliminary and tentative."  Acosta, 386 F.3d at 11 (citation omitted).  Accordingly, police officers do not have a standing obligation to investigate potential defenses before finding probable cause.  Id. (citing Baker v. McCollan, 443 U.S. 137, 145-46 (1979)).  In most circumstances, an officer may terminate his investigation when he accumulates facts that demonstrate sufficient probable cause.  Id. (citations omitted).  However, in B.C.R. Transport Co. v. Fontaine, 727 F.2d 7 (1st Cir. 1984), the First Circuit recognized that a duty to investigate may arise in certain special circumstances.  In that case, police officers effected an arrest by relying upon an incoherent individual's allegations without further investigation.  Id. at 10.  Under those circumstances, the jury could find that there was no probable cause.  Id. at 10-11.

Here, there was no reason, inherent in the situation, to disbelieve Phelan's account. She reported an assault perpetrated by her boyfriend. Her affect was consistent with the story she told the police officers and she told a coherent story that the police officers found credible. Although Chapman denied her allegations and may have provided the officers with a different story, further investigation was not likely to clarify, in any definitive way, who may have been telling the truth. In such situations, officers are not obligated to make a definitive credibility judgment about differing accounts. Holder, 585 F.3d at 506. Under the circumstances, Officers Finnegan and Peralta has a reasonable basis for believing there was probable cause to arrest Chapman. Accordingly, the Court grants summary judgment in favor of the Defendants and against Chapman on his false arrest claims.

D.  Denial Of Medical Care Claims

Deliberate indifference to a prisoner's serious illness or injury states a cause of action for a violation of the Eighth Amendment under Section 1983.[6] Estelle v. Gamble, 429 U.S. 97, 105 (1976). To establish an Eighth Amendment violation, Chapman must show that: (1) objectively, the deprivation alleged is sufficiently serious; and (2) subjectively, that Defendants were deliberately indifferent to his health or safety. Farmer v. Brennan, 511 U.S. 825, 834 (1994).

A medical need is "serious" if "it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Gaudreault v. Municipality of Salem, 923 F.2d 203, 208 (1st

---

[6] As a pretrial detainee, Chapman's claims derive from the due process protections afforded under the Fourteenth Amendment to the U.S. Constitution. Gaudreault v. Municipality of Salem, 923 F.2d 203, 208 (1st Cir. 1990). The Fourteenth Amendment grants pretrial detainees a right to adequate medical care analogous to the Eighth Amendment rights of convicted prisoners. Id.

Cir. 1990). The seriousness of an inmate's needs may also be determined by reference to the effect of a delay in treatment. Id.

An Eighth Amendment claim based on medical mistreatment requires more than "an inadvertent failure to provide adequate medical care" and must involve "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Feeney v. Correctional Medical Services, 464 F.3d 158, 161 (1st Cir. 2006) (quoting Estelle, 429 U.S. at 105-106). Deliberate indifference "may be manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Estelle, 429 U.S. at 104-5. Chapman can demonstrate deliberate indifference only if the medical attention he received is "so clearly inadequate as to amount to a refusal to provide essential care" and must be "so inadequate as to shock the conscience." Torraco v. Maloney, 923 F.2d 231, 234 (1st Cir. 1991) (citations omitted).

Although issues concerning state of mind, such as deliberate indifference, are often unsuited to resolution on summary judgment, summary judgment is appropriate when there is no evidence that a plaintiff received treatment "so inadequate as to shock the conscience." See Torraco, 923 F.2d at 234; see also, Sires, 834 F.2d at 13 (finding summary judgment appropriate where the only evidence produced "demonstrated carefully thought-out medical decisions."); Massey v. Rufo, No. 92-1380, 1994 U.S. App. LEXIS 6202 (1st Cir. 1994) (finding that there was no material question of fact that defendants were not deliberately indifferent to the plaintiff's needs and that "discovery would not aid plaintiff."). Such is the case here.

Although Chapman disputes how he obtained his diabetes medication, he does not

dispute that he was able to inject himself with his diabetes medication while at the Marblehead police station. SOF ¶ 22. He also does not dispute that he was at the Marblehead police station for only 30 to 45 minutes and was then transferred to the Essex County House of Correction at Middleton, Massachusetts. SOF ¶¶ 23, 26. Accordingly, he has presented no evidence that the Defendants were deliberately indifferent to his medical needs while at the Marblehead police station.

Chapman appears to argue that the officers' failure to refrigerate his medication shows deliberate indifference. Docket No. 48 at 2. He alleges that despite being told that his medication needed to be refrigerated, the officers did not put the medication in the refrigerator. Id. Therefore, the medication spoiled and he was unable to take it during the three days that he was in custody at the Essex County House of Correction. Id. However, Chapman has presented no evidence that the failure to refrigerate the medication was anything other than negligent.[7] In any event, Chapman was in the custody of Defendants for only 30 to 45 minutes and was transferred to the custody of the Essex County House of Correction thereafter, where he was housed in the Medical Unit. SOF ¶¶ 26-27. He has presented to no evidence that his failure to receive medication was the result of the actions of the Defendant officers, and not of the actions of Essex County House of Corrections personnel, who are not defendants in this action. Accordingly, he has failed to adduce sufficient evidence to support a constitutional claim of deliberate indifference and the Court grants summary judgment in favor of the Defendants and against Chapman on that claim.

---

[7] Negligence alone on the part of an official does not rise to the level of a constitutional violation. See DesRosiers v. Moran, 949 F.2d 15, 19 (1st Cir. 1991).

### E. Assault And Battery Claims

In Counts Two and Three of the Complaint, Chapman alleges that Officers Finnegan and Peralta committed assault and battery when they arrested him. Assault and battery is "the intentional and unjustified use of force upon the person of another, however slight, or the intentional doing of a wanton or grossly negligent act causing personal injury to another." Spencer v. Roche, 755 F. Supp. 2d 250, 268 (D. Mass. 2010) (citation omitted). Massachusetts law allows for assault and battery claims against police officers who use excessive force in conducting an arrest. Raiche v. Pietroski, 623 F.3d 30, 40 (1st Cir. 2010) (citing Powers v. Sturtevant, 199 Mass. 265 (1908)). However, Massachusetts law also allows an officer to use reasonable force in conducting a lawful arrest. Id.

Here, Chapman has pointed to no evidence that Officers Finnegan and Peralta used excessive force in conducting his arrest. For example, he has not alleged, let alone adduced any evidence, that he was injured directly as a result of his arrest. Accordingly, Chapman's assault and battery claims fail as a matter of law.

## IV. ORDER

For the foregoing reasons, this Court grants the Defendants' motion for summary judgment.

/s/ Jennifer C. Boal
JENNIFER C. BOAL
United States Magistrate Judge